UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE


STACEY LYNN PHILLIPS        )
        )
v.        )        NO.  2:07-CR-17
        )        NO.  2:08-CV-251
UNITED STATES OF AMERICA        )


## MEMORANDUM OPINION AND ORDER


Stacey Lynn Phillips ("petitioner" or "Phillips"), a federal prisoner, has filed this "Motion Under 28 USC § 2255 To Vacate, Set Aside Or Correct Sentence By A Person In Federal Custody," [Doc. 32].  The United States has responded in opposition, [Doc. 35], and Phillips has replied to the government response, [Doc. 37]. The matter is now ripe for disposition.  The Court has determined that the files and records in the case conclusively establish that the petitioner is not entitled to relief under § 2255 and, therefore, no evidentiary hearing is necessary.  *See* Rule 8, Rules Governing Section 2255 Proceedings For The United States District Courts.  For the reasons which follow, the petitioner's § 2255 motion lacks merit, and the motion will be DENIED.

## I.    Procedural and Factual Background

On February 13, 2007, the federal grand jury returned a one count indictment

charging Phillips with a conspiracy to possess with the intent to distribute and distribute cocaine hydrochloride, [Doc. 3]. Pursuant to a negotiated plea agreement, [Doc. 14], the defendant entered a plea of guilty to the indictment on July 9, 2007. Filed along with petitioner's plea agreement was an agreed factual basis, [Doc. 15], submitted pursuant to Rule 11(b)(3) of the Federal Rules of Criminal Procedure, which stated as follows:

> This Agreed Factual Basis is submitted pursuant to Rule 11(b)(3), Federal Rules of Criminal Procedure, in addition to a plea agreement in which the defendant agrees to plead to an indictment charging the defendant with a violation of Title 21, United States Code, Sections 846 and 841(a)(1)(C).
>
> From approximately the spring through the fall of 2003, Stacey Lynn Phillips conspired and agreed with others, to include Christopher Shults, James Mark Thornton, and Michael Vassar, to distribute and possess with the intent to distribute cocaine hydrochloride, a Schedule II controlled substance.
>
> Prior to Stacey Phillips agreeing to cooperate with law enforcement agents on August 30, 2005, Phillips' co-conspirators, specifically Thornton and Shults, had already informed law enforcement agents that they had obtained between 5 and 15 kilograms of cocaine from Phillips in 2003. The distribution occurred in Cocke County and surrounding counties in the Eastern District of Tennessee.

The Presentence Report contained additional, unobjected to facts as follows:

> According to Special Agent Jim Williams of the Tennessee Bureau of Investigation, information was received by law

enforcement officers indicating that coconspirator James Mark Thornton was selling multiple ounce quantities of cocaine. A confidential informant was used to purchase cocaine from codefendant Thornton, and in April of 2005, three purchases were made by the informant. At the time of the last purchase, the informant observed larger quantities of cocaine at Thornton's residence. A search warrant was obtained, and agents located three-fourths of a kilogram of cocaine at the residence of James Mark Thornton.

Subsequent investigation revealed that Dewey Lynn Phillips acted as the source of supply of cocaine in the conspiracy. He distributed cocaine to James Mark Thornton, Michael Carl Vassar, and coconspirator Christopher Shults. In March of 2005, Dewey Phillips was stopped by a Tennessee Highway Patrol officer, and was found to be in possession of $80,000.00 in cash. In August of 2005, Phillips was surveilled at a storage facility located in Jefferson County, Tennessee. He retrieved an item from a storage unit, and then delivered one kilogram of cocaine to a confidential informant. A search warrant was obtained for the unit, and officers located 11 kilograms of cocaine and $32,000.00 in cash.

In April of 2005, James Mark Thornton was interviewed by agents of the Tennessee Bureau of Investigation. Thornton advised that he had initially started purchasing cocaine from Chris Shults. Thornton indicated that Dewey Lynn Phillips and Stacey Phillips were obtaining approximately 15 kilograms per month of cocaine, and their source of supply was a Hispanic in the Morristown, Tennessee, area. Chris Shults was interviewed by agents in August of 2005. He confirmed that he was obtaining kilogram quantities of cocaine from Dewey Lynn Phillips, and stated he normally paid $24,000.00 per kilogram. Shults indicated that he had initially been purchasing cocaine from Stacey Phillips, then began purchasing from his father, Dewey Lynn Phillips.

3

> Based on the above information, and the agreement of the
> parties, defendant Phillips will be held accountable for the
> distribution of at least five, but less than 15 kilograms of
> cocaine.

Presentence Investigation Report, ¶¶ 9-11.

As a result of his conviction, Phillips faced a term of imprisonment not to exceed twenty years pursuant to 21 U.S.C. § 841(a)(1). The probation officer calculated his guidelines sentencing range to be 108 to 135 months based on a total offense level of 29 and a criminal history category of III. The government filed a motion for downward departure pursuant to U.S.S.G. § 5K1.1, [Doc. 20], and an extensive memorandum in support thereof, [Doc. 25]. Based on the substantial assistance of Phillips, the government recommended a four level reduction in the total offense level, resulting in a guidelines range of 70 to 87 months imprisonment.

The defendant raised no objections to the calculation of the guideline range by the probation officer. At a sentencing hearing held on October 22, 2007, the Court adopted the findings of the presentence report as to the guidelines range, granted the government motion for downward departure and applied the advisory guideline range recommended by the government, *i.e.* 70 to 87 months imprisonment. After hearing the testimony of witnesses and the arguments and statements of counsel, Phillips was sentenced to a 70 month term of imprisonment, three years supervised release and a $100.00 mandatory assessment. Judgment was entered on October 31, 2007. No

4

direct appeal was taken. Petitioner's motion to vacate was then timely filed on September 2, 2008.

## II.    Standard of Review

This Court must vacate and set aside petitioner's  sentence if it finds that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, . . ." 28 U.S.C. § 2255.  Under Rule 4 of the Governing Rules, the Court is to consider initially whether the face of the motion itself, together with the annexed exhibits and prior proceedings in the case, reveal the movant is not entitled  to relief.  If it plainly appears the movant is not entitled to relief,  the court may summarily dismiss the § 2255 motion under Rule 4.

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States,* 285 F.2d 733, 735 (6th Cir. 1961).  "Conclusions, not substantiated by allegations of fact with some probability of verity,  are not sufficient to warrant a hearing." *O'Malley*, 285 F.2d at 735 (citations omitted).  A motion that merely states general conclusions of law without substantiating allegations with facts is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v.*

5

*Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996).

To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted) (§ 2254 case); *Clemmons v. Sowders*, 34 F. 3d 352, 354 (6th Cir. 1994). *See also United States v. Cappas*, 29 F.3d 1187, 1193 (7th Cir. 1994) (applying *Brecht* to a § 2255 motion). If the sentencing court lacked jurisdiction, then the conviction is void and must be set aside. *Williams v. United States*, 582 F. 2d 1039, 1041 (6th Cir.), *cert. denied*, 439 U.S. 988 (1978). To warrant relief for a non-constitutional error, petitioner must show a fundamental defect in the proceeding that resulted in a complete miscarriage of justice or an egregious error inconsistent with the rudimentary demands of fair procedure. *Reed v. Farley*, 512 U.S. 339, 354 (1994); *Grant v. United States*, 72 F. 3d 503, 506 (6th Cir.), *cert. denied*, 517 U.S. 1200 (1996). In order to obtain collateral relief under § 2255, a petitioner must clear a significantly higher hurdle than would exist on direct appeal. *United States v. Frady*, 456 U.S. 152 (1982).

The Sixth Amendment provides, in pertinent part, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. A defendant has a Sixth Amendment right

not just to counsel, but to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Supreme Court set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland* 466 U.S. at 687. As with any other claim under § 2255, the burden of proving ineffective assistance of counsel is on the petitioner. *Virgin Islands v. Nicholas*, 759 F. 2d 1073, 1081 (3rd Cir. 1985).

In considering the first prong of the test set forth in *Strickland*, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688. A defendant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all

7

the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

The second prong of the *Strickland* test requires the petitioner show counsel's deficient performance prejudiced the defense. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. The petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The *Strickland* Court emphasized both prongs must be established in order to meet the claimant's burden, and if either prong is not satisfied the claim must be rejected, stating:

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

*Id.* at 697.

## III. Analysis and Discussion

## A.    The Collateral Review Waiver

Petitioner faces a major initial hurdle in this case in the form of the

appellate and collateral attack waiver contained in his plea agreement.  Paragraph 14

of petitioner's plea agreement provides:

> 14.    (a) In consideration of the concessions made by the
> United States in this agreement and as a further
> demonstration of the defendant's acceptance of
> responsibility for the offense, the defendant agrees not to
> file a direct appeal.  Thus the defendant knowingly and
> voluntarily waives the defendant's right to appeal the
> conviction and/or a sentence imposed within the applicable
> guideline range as determined by the sentencing court in
> this case.
>
> (b) In addition, the defendant knowingly and
> voluntarily waives the right to file any motions or pleadings
> pursuant to 28 U.S.C. § 2255 or to collaterally attack the
> conviction(s) and/or resulting sentence.  The parties agree
> that the defendant retains the right to raise, by way of
> collateral review under § 2255, claims of ineffective
> assistance of counsel or prosecutorial misconduct not
> known to the defendant by the time of the entry of
> judgment.

[Doc. 14, ¶ 14]

The government argues that this § 2255 motion should be dismissed

because all of the issues raised by Phillips in his petition fall within the scope of his

waiver and Phillips has now waived the right to raise them by way of collateral

review.  The petitioner responds that he should be granted an evidentiary hearing

where he "will present testimonial evidence to support his claim that such waivers are

9

both invalid on their face and were not given knowingly and intelligently." [Doc. 37, p. 4]. More specifically, petitioner acknowledges "that he waived his right to collaterally attack all <u>claims</u> of ineffective assistance and prosecutorial misconduct known to him prior to entry of judgment" but argues that his "knowledge of certain <u>facts</u>" does not "equate [] to knowledge of <u>claims</u>." [*Id.* at p. 10]. He further argues that he "did not proffer the waiver in a knowing and voluntary manner." [*Id*. at p. 11].

Petitioner argues essentially that, at the time of the Rule 11 colloquy, he was relying on an oral promise by the government to file a motion for a fifty-percent (50%) downward departure because of his cooperation with the government and that he "could not foresee the government's breach of that agreement . . ., foresee counsel's constitutionally deficient assistance at sentencing . . . or the court's abuse of its discretion at sentencing . . ." [*Id.* at p. 12]. In other words, the petitioner argues that he could not voluntarily and intelligently waive the right to collaterally attack claims that he did not foresee, arguing that "[o]ne cannot knowingly waive a right to an event that has not occurred." [*Id*. at p. 13]. [1]

"A defendant in a criminal case may waive any right, even a constitutional right, by means of a plea agreement." *United States v. Fleming*, 239 F.3d 761, 763-64

---

[1] Plea bargains always entail risks relating to future developments and the parties allocate these risks in the plea process and agreement. *See United States v. Bradley*, 400 F.3d 459, 463-64 (6th Cir. 2005).

(6th Cir. 2001). It has been specifically held that "a defendant's informed and voluntary waiver of the right to collaterally attack a conviction and sentence is enforceable." *In re Acosta*, 480 F.3d 412, 422 (6th Cir. 2007). The Sixth Circuit has made a distinction, however, between cases that involve "issues a defendant has validly agreed not to appeal or attack collaterally from those that go to the very validity of the guilty plea." *Id.* In *Acosta*, the Sixth Circuit stated:

> [I]n cases where a defendant argues that his plea was not knowing or voluntary, or was the product of ineffective assistance of counsel . . . it would be entirely circular for the government to argue that the defendant has waived his right to an appeal or a collateral attack when the substance of his claim challenges the very validity of the waiver itself.

*Id.*

In the Sixth Circuit, therefore, "claims that a guilty plea was not knowing and voluntary, or was the product of ineffective assistance of counsel . . . generally cannot be waived." *Id.* at 421, n.2. The same reasoning applies to attacks on the underlying waiver provision. *Id.* at 422. The Rule announced in *Acosta*, however, places the court in a difficult position. On the one hand, the Sixth Circuit has clearly cautioned against rigid application of the waiver. On the other hand, simply accepting the petitioner's assertion that the waiver was unknowing and involuntary and deciding the matter on the merits largely defeats the purpose of the waiver in the first place. It would appear, then, that the court must examine the record and determine whether

11

petitioner's argument as to the invalidity of the waiver has a basis in the record. *Acosta* suggests as much, indicating that waiver enforcement is proper if "the defendant did not articulate a basis for attacking the validity of the [waiver]." *See also Jones v. United States,* 120 Fed. Appx. 594, 596 (6th Cir. 2005) (enforcing a waiver provision as a bar to a claim of ineffective assistance of counsel that attacked the "waiver itself" because the claim had "no basis" in the record).

Here, the petitioner makes at least one argument, set forth above, that the waiver is invalid. The Court must consider, then, whether the claim has any legal or factual basis in the record. If "the conclusiveness of [the] waiver of his right to bring a § 2255 petition is beyond question," *Davila v. United States*, 258 F.3d 448, 451 (6th Cir. 2001), then the court will enforce the waiver and dismiss the petition on that basis. For the following reasons, this Court concludes that the petitioner has not articulated a basis for his claim of invalidity of the collateral attack waiver.

As an initial matter, petitioner's argument that he will present testimony at an evidentiary hearing that the waiver is invalid is unavailing. The petitioner is required, when he files a § 2255 motion, to set forth facts in his petition which entitle him to relief. *Green*, 454 F.2d at 53. Secondly, petitioner's conclusory assertions are flatly contradicted by the record. In that regard, petitioner's plea agreement has two important provisions which undercut Phillips's argument. Paragraph 11 of the plea

agreement provides:

> 11.   No promises have been made by any representative of the United States to the defendant as to what the sentence will be in this case.  Any estimates or predictions made to the defendant by defense counsel or any other person regarding the potential sentence in this case are not binding on the Court.  The defendant understands that the sentence in this case will be determined by the Court after it receives the pre-sentence report from the United States Probation Office and any information presented by the parties.  The defendant acknowledges that the sentencing determination will be based upon the entire scope of the defendant's criminal conduct, the defendant's criminal history, and pursuant to other factors and guidelines as set forth in the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553.

Doc. 14, ¶ 11.

Even more importantly,  paragraph 16 of the plea agreement provides:

> 16.    This plea agreement constitutes the full and complete agreement and understanding between the parties concerning the defendant's guilty plea to the above-referenced charge(s), and there are no other agreements, promises, undertakings, or understandings between the defendant and the United States.  The parties understand and agree that the terms of this plea agreement can be modified only in writing signed by all of the parties and that any and all other promises, representations, and statements whether made before, contemporaneous with or after this agreement, are null and void.

*Id.*, ¶ 16.

The plea agreement provided explicitly that Phillips had read the plea

13

agreement, discussed the charges and possible charges with defense counsel, and understood the crime charged. [*Id.* at ¶ 13]. In addition, the Court thoroughly and carefully examined the petitioner under oath at the change of plea hearing on July 7, 2007, and the petitioner affirmed that he had read the plea agreement, that his attorney had explained to him all the terms and conditions of the plea agreement, and that he fully understood the terms and conditions of the agreement. [Doc. 31, pp. 4-5]. Phillips also testified that he was satisfied with his lawyer's representation of him in the case. [*Id.*]. The Court specifically inquired about any promises made other than those contained in the plea agreement. The following exchange between the Court and petitioner took place:

> Q.     Aside from whatever promises are contained in this plea agreement, has any officer or agent of the government promised or suggested to you that you will receive a lighter sentence or any other form of leniency if you plead guilty?

> A.     No, you Honor.

> Q.     Has any other person made any promise or made any threat to you to induce you to plead guilty in this case?

> A.     No sir.

[Doc. 31, pp. 6-7]. Finally, the Court inquired as to the waiver provisions of paragraph 14 of the plea agreement:

> The Court:  Mr. Smith, has the defendant waived any

14

appeal rights or rights to file a section 2255 motion in this plea agreement?

Mr. Smith:   Yes, your Honor.  In paragraph 14 of the plea agreement that was filed as record entry number 14, paragraph 14(a) provides that Mr. Phillips waives his right to file a direct appeal of his conviction or sentence as long as the sentence imposed is within the applicable guideline range as determined by the court; and paragraph (b) provides a waiver of a right to file any motion or pleading pursuant to 28, U.S. Code, Section 2255 to collaterally attack the conviction or sentence; and, again, these waivers do not apply to claims of ineffective assistance of counsel or prosecutorial misconduct not known to Mr. Phillips by the time of entry of judgment.

The Court:   Alright, thank you, Mr. Smith.

Q.      Mr. Phillips, do you understand that under your plea agreement with the government you have expressly waived certain rights to appeal or to collaterally attack your plea or your sentence as just stated by the United States attorney and as more fully set out in paragraph 14 of your plea agreement?

A.      Yes, your Honor.

Q.      Did you read paragraph 14 of this plea agreement very carefully?

A.      Yes, sir.

Q.      And have you and your attorney discussed this waiver of your rights to appeal and your right to collaterally attack your plea or your sentence in this case?

A.      Yes, your Honor.

15

*Id.* at 9-10.

As all of the above clearly illustrates, Phillips's assertions that his waiver was not voluntarily and knowingly made are simply not credible. Petitioner acknowledges, in his reply to the government response, as he almost surely must, that his plea agreement explicitly provides that no promise regarding a specific sentence had been made and that he had read and understood the terms and conditions of the plea agreement. He argues, however, that while no promise had been made as to a specific sentence, a promise had been made by the government, prior to the execution of the plea agreement, to move for a fifty-percent (50%) reduction in sentence pursuant to U.S.S.G. § 5K1.1. His argument, however, completely ignores the clear language of the plea agreement that the agreement contains "the **full and complete agreement and understanding** between the parties concerning the defendant's guilty plea . . ., and there are **no other agreements, promises, undertakings, or understandings** between the defendant and the United States." [Doc. 14 at p. 7] (emphasis added). Furthermore, the agreement explicitly provides "that any and all other promises, representations, and statements whether made before, contemporaneous with, or after" the plea agreement are null and void. [*Id*. at pp. 7-8]. Petitioner's assertion that his understanding of the terms of the agreement included the alleged promise is simply incredible.

16

With respect to petitioner's answers to the Court's inquiry about any promises that might have been made to him, petitioner asserts that his answers were truthful and that the side agreement he now claims was outside the purview of the Court's questions. He claims that his answer to the Court's specific question about any promises or suggestions of a lighter sentence or any other form of leniency applied only to promises of leniency made "in exchange for his guilty plea" and did not apply to the promise he now claims was made, *i.e.* a recommendation of a fifty-percent (50%) reduction "in exchange for his substantial assistance." Petitioner's distinction is lost on the Court. The Court's question to him was, without doubt, broad enough to encompass the type of promise now asserted by the petitioner and applied specifically to any promise not contained in the plea agreement for any kind of lesser sentence. Petitioner's alleged belief that the oral modification would be "completed at sentencing" and that this somehow relieved petitioner from his obligation to be truthful and candid with the Court is completely untenable. In addition, petitioner's arguments lack support and credibility for another reason. This Court conducted a lengthy sentencing hearing on October 22, 2007, at which the petitioner made a lengthy allocution and answered a number of questions from the Court. He never at any time before the filing of the instant petition made any allegations that some further promise had been made to him.

17

Finally, petitioner's arguments about his understanding of the appellate and collateral attack waivers also lack credibility. The waiver is set out in clear and unambiguous language in the plea agreement, the substance of the waiver was announced orally by the government at the change of plea hearing and petitioner acknowledged under oath that he was aware that his plea agreement contained the waiver, that he had read paragraph 14 of the plea agreement carefully and had discussed the matter with his lawyer. His present argument that he understood the waiver to apply only if the government fulfilled its oral side agreement and if the Court did not abuse "its discretion regarding the application of the § 5K1.1 downward departure" has no legal or factual basis in the record.

Where the court follows the requirements of Rule 11, as it did here, "the defendant is bound by his statements in response to the court's inquiry." *Baker v. United States*, 781 F.2d 85 (6ᵗʰ Cir. 1986). To the extent that Phillips answered the Court's questions falsely or gave misleading and incomplete testimony at the change of plea hearing, his decision to do so cannot invalidate the appellate waivers nor can his decision to lie amount to prejudice under *Strickland*.[2] *See Warner v. United States*,

---

[2]   Even if Phillips could establish that the government had made a promise to move for a fifty percent downward departure and that his counsel was somehow ineffective in not taking steps to enforce the promise, he cannot establish the necessary prejudice under *Strickland*. This is so for a very simple reason. The discussion "whether to depart and how much to depart are entirely committed to the district judge's discretion." *United States v. Jones*, 417 F.3d 547 (6ᵗʰ Cir. 2005). Indeed, where the district court grants a downward departure for substantial assistance, as it did here, and the defendant's claim on appeal goes only to the extent of the departure, the decision of the district court is not subject to appellate review.

975 F.2d 1207, 1212 (6th Cir. 1992). The record in this case contains no legal or factual basis for petitioner's argument that the appellate and collateral attack waivers were not knowingly and intelligently entered into and are thus invalid. The collateral review waiver is completely enforceable and this matter can be dismissed on that basis alone. Even if the waiver was not enforceable, however, the record conclusively establishes that Phillips's arguments fail on the merits.

### B.     Ineffective Assistance of Counsel

Petitioner divides his claims of ineffective assistance of counsel into claims involving the "plea process," the "indictment process," and the "sentencing process." Petitioner acknowledges that he began his involvement in drug trafficking as a 21year old street level dealer dealing in small quantities of powder cocaine. As a result, he was arrested on March 30, 1996, and charged with felony possession of cocaine with the intent to sell, a charge leading to his subsequent conviction and eight year suspended sentence. He further acknowledges that, in 1999, he was arrested while engaged in a transaction involving an ounce of cocaine. Because of his cooperation, the new charge was dismissed. His 1996 probation, however, was

---

*Id.* (citing *United States v. Schray*, 383 F.3d 430, 433-34 (6th Cir. 2004)). The government fully informed the Court of the extent of the cooperation of Phillips and the Court heard extensive argument by counsel for defendant that a greater departure was warranted. The Court rejected these arguments and exercised its discretion as to the extent of the departure, a decision which is not subject to review. Thus, the government's recommendation would not have resulted in a different sentence for Phillips and he has suffered no prejudice.

19

revoked and he received a 30-day term of imprisonment, which he never served. Then, according to the petitioner, he began in March 2003 to deal in kilogram quantities of cocaine but withdrew from his drug trafficking activities voluntarily after about six months. In 2005, petitioner's father, Dewey Phillips, was arrested in possession of eleven (11) kilograms of cocaine.

During the next 22 months, petitioner cooperated with FBI and state law enforcement officers. He worked as a confidential informant, arranged buys of cocaine and testified at the federal trial of another drug trafficker, Michael Vasser. At least in part based on the cooperation of the petitioner, nearly a dozen others involved in the trafficking of cocaine were prosecuted. During the first 14 months of his cooperation, petitioner believed that his assistance to, and cooperation with, law enforcement was "solely for sentencing credit" for his father. This belief was, according to petitioner, reinforced on two occasions. First of all, at some point, FBI agent Kevin Keithley, the lead federal law enforcement officer involved in the drug trafficking investigations, stated, in response to Phillips's question, that "there was no intention to indict" petitioner. Secondly, AUSA Neil Smith, the federal prosecutor assigned to the investigations, stated, again in response to Phillips's questions, that "the government had done enough damage to the Phillips family."

In November, 2006, petitioner was notified by letter that he would be

indicted, in violation of the "agreement" with AUSA Smith not to do so. Upon being notified of the government's intention to indict, petitioner elected to continue his cooperation based on the agreement of the government to move for a fifty-percent (50%) reduction in Phillips's guidelines sentence based on pre-November, 2006 cooperation, a further motion for an additional reduction based on post-November, 2006 cooperation and an agreement not to file a § 851 enhancement notice which would have subjected Phillips to a 10 year mandatory minimum sentence.[3] Phillips continued his cooperation with the government from November, 2006, and assisted in cases against four or five additional defendants.

On February 13, 2007, the federal grand jury returned an indictment against the petitioner and he surrendered on April 13, 2007. An initial appearance and arraignment were held on that same day. Newport attorney William Liebrock made an appearance for the petitioner at the initial appearance and arraignment and represented the petitioner through the conclusion of this prosecution. Liebrock also represented the petitioner's father, Dewey Phillips. The magistrate judge, pursuant to Rule 44 of the Federal Rules of Criminal Procedure, held a hearing into any possible conflict of interest Liebrock might have in representing both the petitioner

---

[3] If the government had elected to charge Phillips with an offense involving five kilograms or more of cocaine, and filed a § 851 notice, the petitioner would have faced a mandatory 20 year minimum term of imprisonment.

and his father. [4]

### 1.    The "Indictment Process"

Petitioner alleges that his trial counsel was ineffective for failing to seek dismissal of the indictment on grounds that the government had agreed not to indict him.  Petitioner's argument fails on the merits for several reasons.

First of all, the record in the case flatly contradicts petitioner's assertion. Petitioner had ample opportunity to inform the Court of his allegations of pre-indictment promises either at the change of plea hearing or at his sentencing hearing. He never did so.  The first time he raised such a claim was with the filing of his § 2255 petition on September 2, 2008, about ten months after his sentencing.   In addition, he fails to plead sufficient facts to establish a binding  agreement by the FBI agent or the AUSA not to prosecute.  He simply states his "belief," based on a statement by Agent Keithley that the government had no intention to indict and AUSA Smith's statement in response to some unspecified question from petitioner that enough had been done by the government to the Phillips family, that the government had agreed not to indict.  Such "facts" fall far short of establishing a binding agreement not to prosecute.  Perhaps most importantly, petitioner testified at the trial

---

[4]  Petitioner, in his memorandum in support of his motion, claims that "as Petitioner's father's legal counsel in the case, Liebrock could not represent petitioner in the matter."  Other than this conclusory assertion, Phillips does not further develop  the argument and the Court will not consider it further.

of Vassar on June 18, 2006, that no representations had been made that he would not be charged and even recalled Agent Keithley telling him that at some point he would in fact be charged. Incredibly, petitioner now argues that "[w]hile petitioner's trial testimony against Vasser may have been admissible at trial for a jury's consideration, it has no bearing here because of petitioner's plea." [Doc. 37, p.6]. Petitioner offers no authority for his novel assertion and none exists. He is bound by his prior testimony.

Secondly, as noted above, the petitioner's plea agreement contains an integration clause restricting its terms to those written in the agreement. An integration clause prevents a criminal defendant who has entered into a plea agreement from prevailing on a claim that the government made oral promises to him not contained in the plea agreement itself. *United States v. Butler*, 297 F.3d 505, 513 n.8 (6th Cir. 2002); *United States v. Hunt*, 205 F.3d 931, 935 (6th Cir. 2000); *Peavy v. United States*, 31 F.3d 1341, 1345 (6th Cir. 1994). The language of the plea agreement here is clear and unambiguous - any promises made prior to, or contemporaneously with, the plea agreement which are not set out in the plea agreement itself are null and void. Not only does the plea agreement establish by its plain language that no promises had been made which are not contained in the plea agreement, it also provides that, to the extent any were made, they are null and void.

23

Two other matters bear brief mention here. First, to the extent petitioner now expresses dissatisfaction with the failure of counsel to file a meritless motion to dismiss the indictment based on an alleged pre-indictment agreement not to indict, counsel's acts were fully known to petitioner at the time of the entry of his guilty plea; yet he told this Court under oath that he was satisfied with his lawyer's representation of him. He is now bound by this statement as well. Second, to the extent a promise not to indict could be found in the statement alleged to have been made by Agent Keithley, the petitioner has not offered any basis for concluding that the promise was made by one with the authority to do so. [5]

Petitioner's claims of ineffective assistance of counsel in the "indictment process" lack any merit whatsoever.

## 2. The "Plea Process"

Petitioner criticizes counsel for the advice he gave to petitioner concerning his options when presented with the plea agreement proposed by the government. According to petitioner, he was told by counsel that he had two options–execute the plea agreement or proceed to trial. Petitioner acknowledges that counsel properly advised him that taking the matter to trial was not a good option. He

---

[5] *See United States v. Taylor*, 270 F.3d 356 (6th Cir. 2001) (agents not authorized to promise pretrial diversion); *United States v. Streebling*, 897 F.2d 368 (6th Cir. 1993) (no evidence that FBI agent had authority to make promise not to prosecute); *United States v. Schaffer*, 2006 WL 3196924 (E.D. Tenn.) (ATF agent not authorized to promise immunity).

criticizes counsel, however, for not advising him of a third option, that of pleading guilty without a plea agreement–what petitioner refers to as an "open plea." Petitioner argues that entering a guilty plea without use of a plea agreement would have allowed him to remain eligible for the three level reduction in his advisory guidelines range pursuant to U.S.S.G. § 3E1.1, would have allowed him to remain eligible for a downward departure motion, would have "require[d] the government to abide by their agreement not to bring a motion [for enhanced sentence] pursuant to 21 U.S.C. § 851[6] and would have preserved his appellate and collateral review rights. He acknowledges that such a course would have left him subject to additional charges but claims "such was an acceptable risk" and he would have taken this option if he had known it was available to him.

This is precisely the type of advice from an attorney which should not be second guessed in § 2255 proceedings. Where, as here, the plea agreement represented a compromise between the parties, and petitioner received a benefit, the plea agreement cannot be said to have prejudiced petitioner or to be so deficient as to constitute evidence of ineffective performance on the part of counsel. *See Hunter v. United States*, 160 F.3 1109, 1115 (6th Cir. 1998). Petitioner's counsel advised him

---

[6]  Petitioner offers no explanation as to why the government would have been required not to file the § 851 notice absent its agreement not to do so as part of the terms of a plea agreement. He acknowledges that the government offer not to file the enhancement notice was part of the government's inducement to convince him to accept the terms of the plea agreement.

to execute a plea agreement which ultimately resulted in petitioner receiving a 70 month term of imprisonment when he otherwise would have faced a mandatory minimum 240 month sentence based on the quantity of cocaine involved in the offense and petitioner's prior felony drug trafficking offense if he had taken the case to trial and been convicted. No objective or reasonable person in petitioner's position would have found that risk to be acceptable. This issue is totally without merit.

### 3. The "Sentencing Process"

Petitioner alleges that counsel rendered ineffective assistance of counsel at sentencing by failing: 1) to have the government's oral commitments incorporated into the written plea agreement; 2) to object to the government's recommendation of a reduction of his guideline sentencing range to 70 to 87 months based on petitioner's substantial assistance; 3) to object to the PSR's use of a quantity of drugs "far in excess of the quantity indicted and pled to based on *United States v. Booker*;" 4) to object to "the terms of the government's § 5K1.1 motion on breech [sic] of contract grounds;" and 5) to identify and challenge sentencing issues on appeal. Petitioner also contends that his 70 month sentence was an abuse of the Court's discretion.

For the reasons discussed above, petitioner's allegations of oral side agreements not set forth in the plea agreement are not credible. In any event, he fails to show–in fact makes no attempt to show–how his attorney could have accomplished

incorporating into his plea agreement oral agreements the government denies were ever made. Any change in the language of the proposed agreement would have required that the government concur in the change. The government was clearly unwilling to do so and petitioner's attorney clearly could not unilaterally have done so.

All of the other claims related to ineffective assistance of counsel at sentencing deal with the issues raised in connection with the government's motion for downward departure or the *Booker* issue. As set forth above, the Court's decision to depart downward to a 70 to 87 month imprisonment range was a matter completely within the Court's discretion and petitioner's attorney argued vigorously for a greater reduction. The quantity of drugs used to calculate the advisory guideline range, for the reason set forth below, was not a violation of *Barber*. There was no breach of contract by the government and petitioner had waived his right to file a direct appeal. These claims lack merit. Because the underlying issues lack merit, there was no deficient performance by counsel related to those issues and, even if there were, petitioner clearly suffered no prejudice. These claims of ineffective assistance of counsel lack merit as well.

## C. Violation of Petitioner's Fifth and Sixth Amendment Rights by Judicial Factfinding

Petitioner next argues that, since both the indictment and plea agreement are

silent as to a specific quantity of drugs, the Court's use of a five to 15 kilogram amount to calculate his advisory guidelines range was improper. More specifically, he argues that judge–found facts increased his guidelines range from 8 to 14 months imprisonment to 108 to 135 months imprisonment. Petitioner's reasoning goes like this: since he admitted no specific cocaine quantity, his base offense level under the guidelines was 12 (for a quantity of less than 25 grams of cocaine–the lowest level possible), and with a three level offense level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1,[7] the total offense level would be 9. With a criminal history category III, the resulting guidelines range would be 8 to 14 months.[8]

The petitioner's argument is based on a misunderstanding of the *Booker* decision. Phillips claims that all judicial factfinding is prohibited at sentencing and the only facts that can be considered are those found beyond a reasonable doubt by a jury or admitted by the defendant. Phillips is incorrect. As the Sixth Circuit has made clear on many occasions since the Supreme Court's *Booker* decision, judicial factfinding under an advisory guidelines regime does not violate the Sixth

---

[7] Petitioner overlooks the fact that U.S.S.G. § 3E1.1 (b) provides for a reduction of only two levels if the base offense level is 16 or less.

[8] The Probation Officer calculated a base offense level of 32, based on a quantity of at least five kilograms but less than 15 kilograms of cocaine, with a three level reduction for acceptance of responsibility, resulting in a total offense level of 29. This calculation was unobjected to by the petitioner.

Amendment.  *See, e.g., United States v. Thompson*, 515 F.3d at 568 (6th Cir. 2008)

("The Supreme Court has sanctioned judicial factfinding, even factfinding that

*enhances* rather than reduces a defendant's sentence, so long as the factfinding does

not result in a sentence beyond the statutory maximum.") (emphasis in original);

*United States v. Gardiner*, 463 F.3d 445, 461 (6th Cir. 2006) ("[A] district court may

make its own factual findings regarding relevant sentencing factors, and consider

those factors in determining a defendant's sentence."); *United States v. Stone*, 432

F.3d 651, 654-55 (6th Cir. 2005) ("*Booker* did not eliminate judicial fact-finding."),

*cert. denied*, 549 U.S. 821, 127 S. Ct. 129, 166 L.Ed.2d 35 (2006).  When engaging

in this factfinding, district courts employ the "same preponderance-of-the-evidence

standard that governed prior to *Booker*."  *United States v. Ferguson*, 456 F.3d 660,

665 (6th Cir. 2006).

Phillips's claim that judicial factfinding is prohibited at sentencing and that the

only facts that can be considered are those found beyond a reasonable doubt by a jury

or admitted by the defendant is patently without merit.

### D.     Abuse of Discretion In Applying  § 5K1.1

Petitioner next argues that "[a]t sentencing, the Court abused its discretion in

applying U.S.S.G. § 5K1.1 to the facts of the case."  Although petitioner's argument

in support of the claim is rambling and largely incoherent, the bottom line of the

29

argument is that petitioner disagrees with the Court's conclusion as to the extent of the downward departure. Phillips's claim is not cognizable either on appeal or through a § 2255 motion.

Petitioner's claim goes to the merits of this Court's determination that a downward departure from the otherwise applicable advisory guidelines range of 108 to 135 months imprisonment to a range of 70 to 87 months imprisonment was appropriate in the case. In other words, the claim is about the extent of the downward departure. "Such a claim is foreclosed by black–letter law regarding downward departures for substantial assistance." *United States v. Jones*, 417 F.2d 547, 550 (6th Cir. 2005). The decision whether to depart in the first instance and how much to depart is <u>entirely</u> committed to the district judge's discretion, U.S.S.G. § 5K1.1; *United States v. Gregory*, 932 F.2d 1167, 1169 (6th Cir. 1991), and is not reversible on appeal for abuse of discretion, or otherwise, except in the rare case where the district court erroneously thought that it lacked the authority to grant a departure. *United States v. Schray*, 383 F.3d 430, 433-34 (6th Cir. 2004). Furthermore, to the extent petitioner challenges the overall reasonableness of his sentence, he has procedurally defaulted his claim. This claim lacks merit.

### E. Incorrect Findings of Fact at Sentencing and Failure to Consider all the § 3553 Factors

Petitioner contends that the Court "utilized incorrect facts to determine and

30

justify the sentence imposed." Specifically, he alleges that the Court incorrectly stated: 1) that the government had permitted petitioner to plead to an information rather than an indictment when in fact the petitioner was indicted by the grand jury on February 13, 2007; 2) that the government postponed charging petitioner after it was fully aware of his criminal conduct in order to allow him to cooperate; 3) that the petitioner stipulated to the distribution of five to 15 kilograms of cocaine; and 4) that petitioner began to cooperate immediately upon his criminal conduct being discovered by the government. He also contends that the Court failed to fully consider the extent of petitioner's cooperation and assistance against Mario Bautista or the full extent of the injury he suffered from an assault by Bautista. While petitioner acknowledges that "each error standing along might seem minor in nature, as a group they constitute a substantive error by the court." He further contends that the Court failed to give proper weight to various arguments made in his behalf.

Petitioner has procedurally defaulted these claims. Even if not procedurally defaulted, these claims lack any merit whatsoever and are patently frivolous on their face. In reality, petitioner disagrees with the Court's characterization of his conduct and the weight ultimately given to certain facts in the sentencing decision.[9] He

---

[9] It is true, as petitioner asserts, that he was indicted by the federal grand jury and pled guilty to that indictment rather than to an information filed by the United States Attorney. The citation to the record contained in petitioner's memorandum does not support his claim that the Court erroneously stated that he had pled guilty to an information rather to an indictment. In any event, that the Court may have

essentially seeks to relitigate the sentencing decision in this § 2255 proceeding, something he is not permitted to do.

## IV. Conclusion

The Court holds petitioner Phillips's conviction and sentencing were not in violation of the Constitution and laws of the United States, and the motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 will be denied. The Court must now consider issues that may arise if petitioner files a notice of appeal. 28 U.S.C. 2253(c)(2) requires the district court to evaluate the appealability of its decision denying a § 2255 motion.

A certificate of appealability should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473 (2000). Having examined each of petitioner's claims under the *Slack* standard, the Court finds that reasonable jurists

---

misspoken about the charging instrument used by the government in the case is of absolutely no consequence and the petitioner was not prejudiced in any way by this. His argument that the Court did not consider the lack of any violent behavior by the petitioner, "that there were reasons the judge in Petitioner's two previous convictions handed down that the Court considered to [sic] lenient a punishment," that he was involved in drug trafficking for only 7 ½ months and that he quit of his own volition, has become a productive member of society and a dedicated family man were all considered by the Court at the sentencing hearing. That petitioner does not agree with the weight given to these factors by the Court is also of no consequences in this § 2255 matter.

32

could not find that the dismissal of Phillips's claim was debatable or wrong. Therefore, the Court will **DENY** a certificate of appealibility.

A separate judgment will enter.

SO ORDERED.

ENTER:

s/J. RONNIE GREER<br>
UNITED STATES DISTRICT JUDGE